**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14-cv-00078-REB

SYLVIA J. GARCIA,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed January 9, 2014, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result of chronic back pain related to osteoarthritis of the lumbar spine and depression. After her application for

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

supplemental security income benefits was denied,[2] plaintiff requested a hearing before an administrative law judge. This hearing was held on January 14, 2013. At the time of the hearing, plaintiff was 49 years old. She has an associates degree and past relevant work experience as an electronics assembler, lock assembler, construction cleaner, and driver. She has not engaged in substantial gainful activity since September 30, 2011, the date of her application for benefits.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits. Although the evidence established that plaintiff suffered from severe impairments, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. Other impairments were found to be non-severe. The ALJ found that plaintiff had the residual functional capacity to perform light, unskilled, low-stress work which did not require frequent or prolonged contact with supervisors, co-workers, or the general public. Although this finding precluded plaintiff's past relevant work, the ALJ concluded that there were jobs existing in significant numbers in the national and local economies that she could perform. The ALJ therefore found plaintiff not disabled at step 5 of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

---

[2] Plaintiff initially also filed an application for disability insurance benefits under Title II. However, at the hearing, she amended her alleged onset date to January 1, 2012, which was several years after her date last insured. Because plaintiff thus did not have disability insured status as of the alleged date of onset, she withdrew her request for a hearing as to the Title II application. (Tr. 13.) No error attributable to the ALJ's decision to dismiss the request for hearing of that application is asserted in this appeal.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(c).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater***, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite, sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

      4.      If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

      5.      If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 416.920(a)(4)(i)-(v). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

      Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff claims the ALJ erred in (1) failing to adequately account for her deficits in the ability to maintain concentration, persistence, and pace; (2) weighing the medical source opinions of record regarding plaintiff's work-related mental functionality; and (3) mischaracterizing her residual functional capacity as light when in fact it was sedentary. Finding no such reversible error in the ALJ's decision, I affirm.

Plaintiff first argues that in determining her residual functional capacity at step 4 of the sequential evaluation, the ALJ did not adequately account for the moderate difficulties in maintaining concentration, persistence, and pace he found at step 2. (***See*** Tr. 17.) More particularly, she points out that the limitation to unskilled work is an inadequate proxy for deficits in work-related mental functioning. ***See Chapo v. Astrue***, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (limitation to unskilled work "just accounted for issues of skill transfer, not impairment of mental functions – which are not skills but, rather, general prerequisites for most work at any skill level") (citation and internal quotation marks omitted); ***Cira v. Colvin***, – F.Supp.3d –, 2014 WL 4437285 at *3 (D. Colo. Sept. 8 2014) ("There is no direct correspondence between the skills necessary to do a job and the mental demands of that same job."). Although plaintiff has correctly

stated the legal principle, it is not applicable in this case because the ALJ does not appear to have limited plaintiff to unskilled work as a means of accounting for her ability to perform the mental demands of work.

Initially, it is important to remember that the ALJ is not required to include every mental limitation found at step 2 of the sequential evaluation in his residual functional capacity assessment:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

**Social Security Ruling 96-8p**, 1996 WL 374184 at *4 (SSA July 2, 1996). ***See also Beasley v. Colvin***, 520 Fed. Appx. 748, 754 (10th Cir. April 10, 2013) ("The ALJ was under no obligation to include limitations in social functioning in [the claimant's residual functional capacity] based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."). Here, in assessing plaintiff's residual functional capacity, the ALJ noted that despite her claims of inability to focus, plaintiff engaged in fairly substantial activities of daily living, including, *inter alia*, maintaining her own funds and managing a checkbook, playing Bingo, driving a car, and caring for her grandchildren. (Tr. 21-22.) The ALJ found such activities belied any suggestion that a lack of attention or concentration significantly impaired plaintiff's

mental functioning:

> [E]ven minimal operation of a motor vehicle requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds.  It is certainly not a simple and routine set of functions.  The claimant's ability to drive indicates adequate cognitive function. . . . The fact that the claimant is able to engage in such a wide variety of activities, to interact appropriately with friends and family, and to go so often out of her home, indicates that she is capable of sustaining some level of work-related activities throughout a regular work schedule.

(Tr. 22.)

It therefore is apparent that the ALJ did consider the impact of plaintiff's alleged deficits in concentration, persistence, and pace at step 4, but rejected them as having no substantial impact on her residual functional capacity.  *Cf. Apodaca v. Colvin*, 2014 WL 1309023 at *2 n.4 (D. Colo. April 1, 2014) (noting that the holding in *Beasley* "does not mean, however, that the ALJ's step 4 assessment may be totally divorced – without explanation – from his prior determination of the nature and severity of the claimant's impairments.").  Viewed in this context, the ALJ's limitation to unskilled work appears to be intended to account – and appropriately so – for plaintiff's lack of transferable skills, not her mental functioning.  Accordingly, remand is not warranted on this basis.

Plaintiff further faults the ALJ for affording more weight to the opinion of the non-examining state agency psychiatrist, Dr. Ellen Ryan, than that of the consultative psychological examiner, Dr. Carlos Rodriguez.  Plaintiff tacitly concedes that the ALJ articulated specific, legitimate reasons for assigning little weight to the opinion of Dr.

Rodriguez, and review of the ALJ's decision bears out this observation. (*See* Tr. 20-21, 23.) However, she suggests that having done so, the ALJ then merely adopted Dr. Ryan's opinions by default, without specifically providing reasons linked to the evidence or considering the factors listed in 20 C.F.R. § 416.927. *See Gonzales v. Colvin*, – F.Supp.3d –, 2014 WL 4723878 at * 5 n.6 (D. Colo. Sept. 22, 2014) ("[A]n ALJ may not adopt one medical source opinion by default simply because he discredits or rejects another.") (citing *Twarog v. Astrue*, 2009 WL 77476 at *4 n. 3 (D. Colo. Jan. 9, 2009)).

      Review of the ALJ's decision belies this assertion. The ALJ considered both Dr. Rodriguez's and Dr. Ryan's opinions in the context of a lengthy discussion of the medical and other evidence related to plaintiff's mental functioning. In that regard, the ALJ noted and discussed plaintiff's lack of specialized mental health treatment, her failure to avail herself of readily available counseling,[3] the fact that plaintiff herself reported that her medications were effective, and her substantial activities of daily living. (Tr. 21-23.) Having considered these evidence-based factors, the ALJ concluded that Dr. Ryan's assessment of plaintiff's abilities was more consistent with the record as a whole, and therefore entitled to great weight. These same considerations led the ALJ to find that Dr. Rodriguez's opinion did not accurately reflect plaintiff's true level of

---

[3] Plaintiff suggests that Dr. Ryan's opinion was "stale" because it was completed prior to the time plaintiff began counseling with Spanish Peaks Mental Health Center (Tr. 268-279.). She does not, however, suggest how the failure to consider this evidence prejudiced her in any particular. *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995); *Bernal v. Bowen*, 851 F.2d 297, 302 (10th Cir. 1988). It appears unlikely that this evidence would have altered Dr. Ryan's opinion, as plaintiff received only limited counseling and was terminated from treatment after three months for failure to keep appointments. (Tr. 268.)

functionality.[4]  Although the opinion of a consultative examiner is generally entitled to more weight than that of a non-examining physician who only reviews the records, **see Robinson v. Barnhart**, 366 F.3d 1078, 1084 (10th Cir. 2004), "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources," **Social Security Ruling 96-6p**, 1996 WL 374180 at *3.  Such was the case here.

Lastly, plaintiff claims that the ALJ improperly characterized her residual functional capacity as including the ability for light work, when in fact, the vocational expert specified that the physical restrictions suggested by the ALJ actually were more consistent with sedentary work and proffered alternative jobs in the sedentary category. (Tr. 40.)  Plaintiff argues this error is consequential because if she were properly limited to sedentary work, she would be considered disabled under the Commissioner's Medical-Vocational Guidelines, colloquially known as the Grids.[5]  **See** 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Initially, this argument strikes the court as misplaced, since the non-exertional restrictions imposed by the ALJ would appear to preclude resort to the Grids.  **See Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993) ("[T]he grids may not be applied conclusively in a given case unless the claimant's characteristics precisely

---

[4] In addition, the ALJ also had the benefit of Dr. Ryan's review and assessment of Dr. Rodriguez's opinion.

[5] The Grids are tables that direct a determination of "disabled" or "not disabled" based on intersecting considerations of a claimant's age, work experience, education, and residual functional capacity.  **See Thompson v. Sullivan**, 987 F.2d 1482, 1487 (10th Cir. 1993).

match the criteria of a particular rule.") (internal citations and quotation marks omitted). More particularly,

> resort to the grids is particularly inappropriate when evaluating nonexertional limitations such as pain and mental impairments. In that case, the grids may serve only as a framework to determine whether sufficient jobs remain within a claimant's range of residual functional capacity.

*Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991) (internal citations omitted).

Indeed, the ALJ did not rely on the Grids – either exclusively or as a framework for his decision – in making his determination at step 5. Instead, he relied on the opinion of the vocational expert, who testified that the sedentary jobs she identified were compatible with the description of the capabilities that the ALJ ultimately incorporated into plaintiff's residual functional capacity. The purpose of the Grids is to provide a "shortcut" and thus "eliminate the need for calling in vocational experts." *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992) (citations and internal quotation marks omitted). Solicitation of and reliance on the testimony of a vocational expert thus obviates the need to reference the Grids at all.[6]

In addition, although plaintiff invokes the Grid Rule for individuals age 50 and older, at the time of the ALJ's decision, she was only 49 years old.[7] Although a 50-year old who has no transferable job skills and the capacity for sedentary work would be

---

[6] Where non-exertional impairments are present, the ALJ may still use the Grids as a "a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the non-exertional limitations." *Thompson*, 987 F.2d at 1492 (citation and internal quotation marks omitted); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). The ALJ did not do so in this case, however. (*See* Tr. 24.)

[7] Under the Commissioner's regulations, a claimant under age 50 is considered a "younger person," whereas someone age 50 to 54 is categorized as a "person closely approaching advanced age." *See* 20 C.F.R. § 416.963(c) & (d).

considered presumptively disabled under Grid Rule 201.14, a 49-year old would not, under Grid Rule 201.21. Although plaintiff points out that she is now 50, the disability decision relates only to the time period through the date of the ALJ's decision, at which time plaintiff was still only 49 years old. (Tr. 25.) Plaintiff presents no authority for her tacit assumption that this post-decision change in her circumstances renders the ALJ's decision infirm or should have retroactive effect.

Accordingly, the ALJ's error in characterizing plaintiff's residual functional capacity as permitting light, as opposed to sedentary, work is ultimately harmless. Remand thus is not warranted on this basis either. ***See Williams v. Chater***, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal"); ***Bernal v. Bowen***, 851 F.2d 297, 302 (10th Cir. 1988) (where ALJ's opinion is otherwise amply supported by the record, error which does not prejudice claimant will not warrant remand).

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 20, 2015, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge